IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TERRY K. REAMER** | * | |
| as personal representative of the | * | |
| **ESTATE OF MELVIN KABIK et al.** | * | |
| | * | |
| | * | |
| v. | * | Civil Action No. CCB-20-2987 |
| | * | |
| | * | |
| **STATE AUTO. MUT. INS. CO. et al.** | * | |
| | ****** | |

## MEMORANDUM

Before the court in this breach of contract, negligence, and conversion action is defendant State Automobile Mutual Insurance Company ("State Auto")'s motion to dismiss (ECF 6), defendant Bank of America, N.A. ("BANA")'s motion for judgment on the pleadings or, in the alternative, for summary judgment, (ECF 21), and the plaintiff's motion for leave to file a surreply (ECF 24). The motions have either been fully briefed or the parties have had an opportunity to respond. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, the motions to dismiss and for judgment on the pleadings will be granted and the motion for leave to file a surreply will be denied.

## BACKGROUND

Plaintiff Terry K. Reamer is the daughter of Melvin Kabik, the personal representative of the Estate of Melvin Kabik, and the Trustee of the Melvin Kabik Revocable Trust. (ECF 4, Compl. ¶¶ 1, 3). Mr. Kabik, deceased, held a Deed of Trust at 5302 Edmondson Avenue, in Baltimore County, Maryland ("the Edmondson property") pursuant to a "Purchase Money Deed of Trust, Assignment of Leases and Rents and Security" entered into between Intelligent Innovative Solutions Statutory Trust and Mr. Kabik. (*See* ECF 4-1 at 1–2; ECF 4, Compl. ¶ 2, 6). On or about

1

June 9, 2017, defendant State Auto issued a businessowners insurance policy ("the policy"), effective September 1, 2017 through September 1, 2018, to Intelligent Innovative Solutions ("IIS"). (ECF 6-3, Ex. A, Policy at 24). On a page titled "Additional Interests/Insureds," the policy lists Mr. Kabik as a "mortgagee" and a "loss payee." (*Id.* at 28). In a section of the policy titled "Businessowners Special Property Coverage Form," the policy states: "We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear." (*Id.* at 86, 103).

On or about July 9, 2018, the Edmondson property was damaged by a fire. (ECF 4, Compl. ¶ 9). State Auto covered the loss associated with the fire, and issued payment for the loss over three checks, each of which was payable to three persons or entities: (1) Santana Nottage, a representative of IIS; (2) IIS's public adjuster, Goodman-Gable-Gould; and (3) Mr. Kabik. (*Id.* ¶ 10–11). The checks listed the payees as follows:

> Pay to the Order of:
> GOODMAN GABLE GOULD
> INTELLIGENT INNOVATIVE
> MR MELVIN KABIK

(ECF 4-1 at 5–7).

The checks were issued on October 10, 2018, November 12, 2018, and December 12, 2018, in the amounts of $146,816.90, $262,470.44, and $24,130.14, respectively and were each delivered to Goodman-Gable-Gould. (*Id,* ¶ 11–12, 14; ECF 4-1 at 5–7). The first check was indorsed by Mr. Kabik, Goodman-Gable-Gould, and Santana Nottage, and subsequently deposited into a Bank of America account.

The plaintiff alleges that Mr. Kabik never received the second or third checks because Santana Nottage, or an unknown representative of IIS, forged Mr. Kabik's name on both checks and deposited them in the same Bank of America account as the first check. (*Id.* ¶ 13, 15).

Following the deposits, on February 15, 2019, counsel for the plaintiff notified State Auto of the alleged forgery. (*Id.* ¶ 17). The plaintiff acknowledges that Mr. Kabik received the amount issued for the first check, and she does not contend that the checks were improperly delivered to Goodman-Gable-Gould.

On August 28, 2020, the plaintiff sued State Auto and BANA in the Baltimore County Circuit Court. (ECF 4, Compl.). The plaintiff brings a breach of contract claim against State Auto, alleging that State Auto breached the policy by failing to timely pay the plaintiff sufficient funds for the repairs and replacement of the Edmondson property, and conversion and negligence claims against BANA. State Auto removed the case to this court and filed a motion to dismiss the breach of contract claims, which the plaintiff opposes. (ECF 6, ECF 11). On November 5, 2020, BANA filed a third party complaint against IIS and Nottage, alleging claims of conversion, restitution, and breach of warranty should Reamer prevail on her claims against BANA. (ECF 12). On July 20, 2021, BANA filed a motion for judgment on the pleadings with respect to Reamer's complaint, or, in the alternative, for summary judgment, to which the plaintiff has not responded. (ECF 21). On July 26, 2021, the plaintiff filed a motion for leave to file a surreply to State Auto's motion to dismiss. (ECF 24). State Auto opposes that motion, (ECF 27), and the plaintiff has replied, (ECF 30). These matters are either fully briefed or there has been an opportunity to respond, and they are ready for resolution.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence

sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is "integral to the complaint and there is no dispute about the document's authenticity." *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral" to the complaint if its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis removed). Where the complaint shows that the plaintiff has adopted the contents of the documents attached to the complaint, "crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.

4

Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are decided under the same standard as motions to dismiss under Rule 12(b)(6). *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009).

## DISCUSSION

### I.  The Plaintiff's Motion for Leave to File a Surreply

State Auto's motion to dismiss has been fully briefed since November 13, 2020, when State Auto filed a reply in support of its motion. (ECF 15). On July 20, 2021, BANA filed a motion for judgment on the pleadings, arguing that the three checks issued by State Auto listed the three payees not as joint payees, but as "stacked payees" such that any payee listed on the check could negotiate it without the others, and BANA properly accepted each check where it was at least indorsed by an IIS representative. *See* Md. Ann. Code, Com. Law § 3-110(d) ("If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument."). Less than a week later, on July 26, 2021, and eight months after the motion to dismiss was briefed, the plaintiff filed a motion for leave to file a surreply to State Auto's motion to dismiss. (ECF 24). The plaintiff seeks to address the issue whether State Auto breached an obligation under the policy to pay Mr. Kabik as the mortgageholder by listing the payees in stacked formation. (*Id.*) The plaintiff argues that the policy requires Mr. Kabik to be listed as a joint payee, and had State Auto done so, the second and third checks could not have been negotiated by the signature of IIS alone.

"Surreplies are highly disfavored in this District." *Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Under Local Rule 105.2(a), surreply memoranda are not permitted to be filed unless otherwise ordered by the court. L.R. 105.2(a) (D. Md. 2021). The court may permit a surreply when the moving party would otherwise be unable to contest matters

5

presented to the court for the first time in the opposing party's reply. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). Here, the plaintiff's proposed surreply is "not responsive to any arguments raised in [State Auto]'s reply brief;" rather, she seeks to present an "entirely new theory" of breach of contract nearly a year after filing her complaint. *Roach*, 165 F. Supp. 3d at 351 (denying motion for leave to file surreply). Nothing prevented the plaintiff from including the argument that State Auto was required under the policy to ensure that no payment could be indorsed without Mr. Kabik's signature in her complaint or in her opposition to State Auto's motion to dismiss. Accordingly, the court will deny the plaintiff's motion for leave to file a surreply and will not consider her new argument.

**II.     State Auto's Motion to Dismiss**

To state a claim for breach of contract under Maryland law, the plaintiff must establish that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). Maryland law treats insurance policies the same as any other contract and does not require that the policies "be construed most strongly against the insurer." *Collier v. MD-Indiv. Practice Ass'n, Inc.*, 327 Md. 1, 5 (1992). Instead, Maryland courts must construe the policy as a whole in order to ascertain the parties' intent. *Id.* State Auto acknowledges that it had an obligation to Mr. Kabik under the policy with respect to Mr. Kabik's rights as a mortgageholder. (ECF 6-2, State Auto Mem. at 2, 6). The obligation to "pay for covered loss of or damage to buildings or structures to each mortgageholder," (ECF 6-3 at 103), appears to be a standard mortgage clause, which creates a "separate contractual relationship between the insurer and the mortgagee" in order to "insulate the

mortgagee from acts of the mortgagor that would invalidate the policy." *Clemons v. Am. Cas. Co.*, 841 F. Supp 160, 162 (D. Md. 1993).[1]

State Auto argues that it fulfilled such obligation when it included Mr. Kabik on all checks issued in connection with the insurance claim and delivered the checks to Goodman-Gable-Gould, and therefore the plaintiff can allege no breach of contract. The plaintiff argues that the obligation to "pay" Mr. Kabik for covered damage is not discharged until Mr. Kabik himself receives the sums from the second and third checks issued to pay the insurance claim.

The plaintiff's argument is based on two provisions of the Maryland Commercial Code: Section 1-201(41) and Section 3-110(d). Section 1-201(41) simply defines an "unauthorized signature" as "a signature made without actual, implied, or apparent authority. The term includes a forgery." This definition alone does not indicate one way or another whether Mr. Kabik himself needed to receive the insurance funds in order for State Auto to discharge its obligations. Similarly, § 3-110(d) does not provide guidance regarding what constitutes payment; rather, it addresses the circumstances under which an instrument may be cashed at a bank by payees jointly or in the alternative.

Other provisions of the Maryland Commercial Code are more helpful. "If a check is payable to more than one payee," as were the checks at issue in this case, "delivery to one of the payees is deemed to be delivery to all of the payees." Md. Code. Ann., Com. Law § 3-420, Cmt. 1. Thus, State Auto's delivery of the checks to Goodman-Gable-Gould was delivery to Mr. Kabik as well. But delivery itself does not discharge State Auto's obligation. "When the drawer draws a check on the drawee and delivers the check to the payee, the check ordinarily is regarded as only

---

[1] The plaintiff has explicitly adopted the contents of the policy as integral to the complaint. (*See* ECF 11-1, Pl. Opp. at 2).

a conditional payment of the underlying obligation." *Ward v. Fed. Kemper Ins. Co.*, 62 Md. App. 351, 358 (1985); *see also* Md. Code Ann. Com. Law § 3-310(b). The obligation is discharged once the check is accepted by a bank, "regardless of when or by whom acceptance was obtained." Md. Code Ann. § 3-414(c). *See also Rezapolvi v. First Nat'l Bank of Md.*, 296 Md. 1, 6–7 (1983) (where a bank issued a cashier's check to a payee of a customer's check in exchange for the check, the customer's obligation as drawer of the check was discharged and the payee could not recover from the customer on the original check).

Here, accepting all of the plaintiff's allegations as true, including her allegation that Mr. Kabik's signature was forged on the second and third checks, State Auto delivered the checks to Goodman-Gable-Gould, thereby conditionally making payment to Mr. Kabik under the policy, and payment was finalized, and the obligation discharged, when BANA accepted the checks. Md. Code Ann., Com. Law §§ 3-310(b), 3-414(c).[2] The plaintiff can identify no breach of the policy. Accordingly, the court will dismiss the plaintiff's breach of contract claim against State Auto.

### III.    BANA's Motion for Judgment on the Pleadings

Under the Maryland Commercial Code, "[a]n instrument is . . . converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Md. Code Ann., Com. Law § 3-420(a).

In Maryland, common-law negligence claims brought by a payee against a depository bank may proceed "only in the absence of an adequate U.C.C. remedy." *Advance Dental Care, Inc. v.*

---

[2] The plaintiff does not contend that the checks were improperly delivered to Goodman-Gable-Gould.

8

*SunTrust Bank*, 816 F. Supp. 2d 268, 270 (D. Md. 2011). The remedy of conversion provided by § 3-420 thus displaces the plaintiff's common-law negligence claim. *Id.* at 270–71.

As for the conversion claim, BANA argues that it must be resolved in the bank's favor, because even if Mr. Kabik's signature was forged on the two checks at issue, Mr. Kabik's signature was not needed to indorse the checks—as a matter of law, the checks were payable to any of the persons listed on the checks alternatively, citing Md. Code Ann., Com. Law § 3-110(d) and *Pelican Nat'l Bank v. Provident Bank of Md.*, 381 Md. 327 (2004). Section 3-110(d) provides that:

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

In *Pelican*, the Maryland Court of Appeals addressed the question whether a check "made payable to multiple payees, listed in stacked formation on its face, without any grammatical connector or punctuation, is ambiguous" as to whether it is negotiable jointly or alternatively under § 3-110(d). 381 Md. at 329. Like the dispute at issue here, the case concerned a check issued by an insurance company for payment on a property damage claim to three payees, the property owner, the mortgageholder on the property, and an insurance adjuster, as follows:

> Andre Michael Bogdan, Jr. Crystal Bogdan [Owner]
> Oceanmark Bank FSB [Mortgageholder]
> Goodman-Gable-Gould Company [Adjuster]

*Id.* at 330. The check was indorsed only by the owner and the insurance adjuster and was presented to the defendant bank, which cashed the check. The owner deposited the proceeds in a commercial account he held at the bank and did not distribute any of those proceeds to the mortgageholder. *Id.* The mortgageholder sued the bank for conversion, arguing that the check should not have been cashed without its indorsement and that the bank had improperly negotiated the check. *Id.* at 331.

The Court of Appeals held that a check which lists payees in a stacked format, without a grammatical connector or punctuation "indicating their relationship or how the check was intended to be paid" is neither clearly payable in the alternative nor clearly payable jointly—it is ambiguous as to the question. *Id.* at 341. Because § 3-110(d) provides that if the instrument is ambiguous in this regard it is deemed payable alternatively, it was proper for the bank to negotiate the check without the indorsement of the mortgageholder. "The indorsement of any one of the payees was sufficient." *Id.*

This case presents nearly identical circumstances. The checks in question were issued to IIS, the owner of the Edmondson property, Mr. Kabik, the mortgageholder, and Goodman-Gable-Gould, the insurance adjuster, in the same stacked format at issue in *Pelican*:

> Pay to the Order of:
> GOODMAN GABLE GOULD
> INTELLIGENT INNOVATIVE
> MR MELVIN KABIK

(ECF 4-1 at 5–7). It is settled Maryland law that a check payable to stacked payees is by default payable to the persons alternatively, because it is ambiguous as to whether it is payable alternatively or jointly under § 3-110(d). *Pelican*, 381 Md. at 341. Thus, BANA could legally negotiate the check without Mr. Kabik's signature and no cognizable claim for conversion exists against it.[3] *Id.* Accordingly, the court will grant BANA's motion for judgment on the pleadings. As BANA's third party complaint against IIS and Nottage is predicated on any viable claims the plaintiff has against BANA, BANA's third party complaint will be dismissed.

---

[3] The plaintiff does not allege that Goodman-Gable-Gould or a representative of IIS did not have the authority to indorse the checks on behalf of those entities.

## CONCLUSION

For the foregoing reasons, the court will deny the plaintiff's motion for leave to file a surreply and grant State Auto's motion to dismiss and BANA's motion for judgment on the pleadings. The court will dismiss BANA's third party complaint. A separate Order follows.

  8/23/2021                                                       /S/
Date                                                      Catherine C. Blake
                                                          U.S. District Court Judge